<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

**MONTACHEM INTERNATIONAL INC.,**

Plaintiff,

v.

**FEDERAL INSURANCE COMPANY,**

Defendant.

Civil Action No. 20-20100 (ZNQ) (DEA)

**OPINION**

<u>**QURAISHI, District Judge**</u>

Before the Court is a Motion to Dismiss filed by Defendant Federal Insurance Company ("Federal Insurance"). (ECF No. 10.) Defendant filed a Brief in Support ("Moving Br.," ECF No. 10-1). Plaintiff Montachem International Inc., ("Montachem") filed an Opposition ("Opp'n Br.," ECF No. 12), and Federal Insurance filed a Reply. ("Reply Br.," ECF No. 15.)

The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion to Dismiss will be DENIED.

**I.      BACKGROUND AND PROCEDURAL HISTORY[1]**

Montachem asserts claims for breach of contract and anticipatory breach of contract against Federal Insurance. (Compl. ¶ 1.)

In 2019, Montachem purchased an insurance policy from Federal Insurance that provides broad coverage for losses arising out of certain acts of terrorism. (Compl. ¶ 20, ECF No. 1-2, attached as Ex. A, "Policy.") Of relevance, the Policy's term period is from May 4, 2019, to May

---

[1] For the purposes of this motion, the Court assumes as true the facts alleged in the Complaint. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

4, 2020, and provides (i) $500,000 in coverage subject to a $25,000 deductible, for losses resulting from computer fraud; and (ii) $500,000 in coverage, subject to a $25,000 deductible, for forgery. (Compl. ¶¶ 20–21.)

On December 22, 2019, Montachem invoiced a customer for a purchase. (Compl. ¶ 29.) Sometime between late December of 2019 and early January of 2020, a hacker gained unauthorized access to the email account of a Montachem Sales Representative. (Compl. ¶ 30.) Thereafter, the hacker emailed an authorized Montachem customer agent and informed them of a change in payment and bank information. (Compl. ¶ 31.) Unaware of the fraud, the customer agent issued a new invoice to the customer that included the hacker's revised payment and banking information. (Compl. ¶ 32.) Pursuant to the newly provided invoice, on February 20, 2020, the customer remitted payment of approximately $213,056.67. (Compl. ¶¶ 34–35.)

In the following weeks, Montachem noticed that the customer had paid its invoice despite receiving zero payment. (Compl. ¶ 36.) Following, Montachem conducted an investigation and discovered that an unknown intrusion had occurred in Montachem's computer system and networks during the period in question. *Id*. Montachem promptly informed the customer of the fraud, however, the customer maintained that it fulfilled its contractual obligation in good faith when it paid their invoice. (Compl. ¶ 38.)

On March 12, 2020, Montachem informed Federal Insurance that it had suffered a loss due to computer fraud and forgery. (Compl. ¶ 41.) Federal Insurance, however, concluded that Montachem was not entitled to coverage because "Montachem was not the entity that transferred the funds" and therefore "Montachem never owned the funds transferred." (Compl. ¶ 42.) Montachem responded that Federal Insurance's reasoning was flawed, and that they are entitled to insurance coverage pursuant to their Policy. (Compl. ¶ 43.) Federal Insurance reiterated their denial of coverage, leading Montachem to initiate the instant action. (Compl. ¶¶ 43–45.)

## II. LEGAL STANDARD

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. When considering a motion under 12(b)(6), a district court must accept as true the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). A court is, however, permitted to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). A court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler*, 578 F.3d at 211.

## III. JURISDICTION

Pursuant to 28 U.S.C. § 1332, this matter is before the Court on diversity jurisdiction.

## IV. DISCUSSION

As an initial matter, the parties' briefing indicates a willingness to apply New Jersey substantive law for the purposes of this Motion.² The Court will therefore apply New Jersey law. *See Manley Toys, Ltd. v. Toys "R" Us, Inc.*, Civ. No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case.") (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999)).

At this stage, resolution of the Motion to Dismiss requires an interpretation of the Policy itself. *Winer Family Trust v. Queen*, 503 F.3d 319, 328 (3d Cir. 2007). Under New Jersey law, if the terms of an insurance contract are clear "it is the function of a court to enforce it as written and

---

² Federal Insurance's briefs apply New Jersey law, but Montachem notes that Federal Insurance does so without a proper choice-of-law analysis. (Opp'n Br. at 11–12.) Montachem signals that it will argue later that Florida should control, but consents to the application of New Jersey law at this stage because the analysis required would involve facts outside the Complaint. (*Id*. at 12.)

3

not make a better contract for either of the parties." *Resolution Tr. Corp. v. Fidelity & Deposit Co. of Maryland*, 205 F.3d 615, 643 (3d Cir. 2000) (citation and internal quotation marks omitted). But if a contract presents any ambiguities, they shall be resolved in favor of the insured. *Id*. (citing *Pittston Co. Ultramar Am. Ltd. v. Allianz Ins. Co.*, 124 F.3d 508, 520 (3d Cir. 1997)). An ambiguity exists "if the terms of the contract are susceptible to at least two reasonable alternative interpretations." *Kaufman v. Provident Life & Cas. Ins. Co.*, 828 F. Supp. 275, 283 (D.N.J. 1992) (citing *Mellon Bank N.A. v. Aetna Business Credit Inc.*, 619 F.2d 1001, 1011 (3d Cir. 1980)). In pertinent part, in an insurance contract, an ambiguity exists if "the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." *Resolution Tr. Corp.*, 205 F.3d at 643.

Here, the parties' dispute centers on the Ownership Provision of the Policy, which is set forth below.

> **IX. OWNERSHIP**
>
> (A) Solely for the purposes of Insuring Clauses (A), Employee Theft Coverage; (B), Premises Coverage; (C),In Transit Coverage; (D), Forgery Coverage; (E), Computer Fraud Coverage; (F), Funds Transfer Fraud Coverage; (G), Money Orders and Counterfeit Currency Fraud Coverage and (H), Credit Card Fraud Coverage, the Company's liability under this Coverage Part shall only apply to Money, Securities or Property owned by an Organization or for which the Organization is legally liable, or held by the Organization in any capacity whether or not the Organization is liable, provided that:
>
>> (1) the Company's liability will not apply to damage to the Premises unless the Organization is the owner of such Premises or is legally liable for such damage; or
>>
>> (2) with respect to Insuring Clause (A), Employee Theft Coverage, the Company's liability will not apply to Money, Securities or Property of a Client.

(Ex. A, "Crime Coverage Part" of the Policy at 12, ECF No. 1-2 at 142.)

Federal Insurance argues that Montachem cannot claim coverage under the Policy unless it can first establish that it either "owned" the stolen funds, "held" the stolen funds, or "was legally liable for" the stolen funds pursuant to the Ownership Provision above. (Moving Br. at 6.) Federal Insurance construes the Complaint as conceding the second of those options—"held"—given that the Complaint only alleges Montachem's customer transferred funds from its own bank account, not one held by Montachem. (*Id.* at 10.) As to the remaining two options, Federal Insurance says the Complaint has not, and cannot, plead that Montachem either "owned" or "was legally liable for" the funds. (*Id.*) Federal Insurance argues that another court in this District dismissed a complaint in a nearly identical situation in *Posco Daewoo Am. Corp. v. Allnex USA, Inc.*, Civ. No. 17-483, 2017 WL 4922014, (D.N.J. Oct. 31, 2017); *Posco Daewoo Am. Corp. v. Allnex USA, Inc.*, Civ. No. 17-483, 2018 WL 6077983 (D.N.J. Nov. 19, 2018).

Montachem disagrees. It argues Federal Insurance interprets the Ownership Provision too narrowly. Montachem asserts that the Complaint does not concede that it did not hold the stolen funds, rather it "held" the funds in its capacity as a holder of an account receivable and thus has a legal interest in the funds that is consistent with the Policy's broad "held . . . in any capacity" language. (Opp'n Br. at 21.)

On reply, Federal Insurance rejects Montachem's theory. It insists that *Posco Daewoo* shows that Montachem does not have an interest in funds owned and held by a third party (*i.e.*, its customer). (Reply at 9.) Federal Insurance highlights that Montachem remains free to seek payment of its invoice from its customer, and merely chooses not to. (*Id.*).

Insofar as this is a motion to dismiss, the Court begins by looking to the Complaint. With respect to ownership of the funds, the Complaint does allege, if indirectly, that it has "ownership

5

over the accounts receivable for the invoiced customer."[3] (Compl. ¶ 42.) Montachem clarifies for the first time in its Opposition that its claim to "ownership" is based on its "holding" of the account receivable, which—it asserts—falls within the Policy's "held . . . within any capacity."

In New Jersey, it is well settled that insurance policies are "scrutinized with particularity." *Morrison v. American Int'l Ins. Co. of Am.*, 381 N.J. Super. 532, 537 (App. Div. 2005) (citing *Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 594-95 (2001)). Consequently, if a section of a policy potentially creates ambiguity, courts should not only focus on the language of that one section, see *Werner Indus., Inc. v. First State Ins. Co.*, 112 N.J. 30, 37 (1988), but attempt to read "the offending section" in the context "of the entire policy in order to determine whether harmony can be found between the alleged ambiguous language and the remainder of the policy," *Morrison*, 381 N.J. Super. at 541 (citing *Zacarias*, 168 N.J. at 603).

In *Posco Daewoo*, a hacker similarly impersonated an agent and induced a customer to wire payment to a fraudulent account. 2017 WL 4922014 at *1. Once the fraudulent activity was discovered, the plaintiff sought payment by the customer, but the customer refused.[4] *Id*. at *2. Similarly, the plaintiff then sought insurance coverage pursuant to its insurance policy. Plaintiff's policy insurance limited coverage to property that is:

> "(i) owns or leases, (ii) holds for others, ((a)) on the Insured's premises or the Insured's Financial Institution Premises, ((b)) while in transit and in the care and custody of a Messenger; or (iii) for which the Insured is legally liable, excepts for property located

---

[3] The Court describes this as pled indirectly because Montachem's assertion of ownership comes as part of a paragraph principally devoted to rejecting Federal Insurance's noncoverage position. The full text of paragraph 42 of the Complaint reads:

> 42. After Montachem provided Federal with information and evidence regarding the hack, Federal responded on June 19, 2020 questioning the requested coverage. Although conceding that 'a Computer Violation may have occurred,' Federal determined that Montachem was not entitled to coverage because 'Montachem was not the entity that transferred the funds' and therefore 'Montachem never owned the funds transferred' *despite Montachem having ownership over the accounts receivable for the invoiced customer.* (Exhibit I)." (emphasis added).

[4] Unlike Montachem, the plaintiff in *Posco Daewoo* sued its customer and the insurance company. As Federal Insurance continues to reiterate, Montachem remains free to pursue a claim against its customer.

>inside the Insured's Client's Premises or the Insured's Client's Financial Institution Premises"

*Id*. at *3. The court held that this language limited coverage to three specific scenarios. *Id*. at *6. The court found that two of the three scenarios were inapplicable, and thus focused on whether plaintiff was entitled to coverage if it ""own[ed]" the property, that is, if [plaintiff] owned the money that the [customer] wired to the [fraudulent account]."" *Id*.

Here, the Court finds the Policy in this case distinguishable from the one in *Posco Daewoo* because the Policy's language—"held . . . in any capacity"—is broader than the "owns" or "holds" language in the policy considered in *Posco Daewoo*. S*ee also New Jersey Title Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh*, Civ. No. 11-630, 2011 WL 6887130 (D.N.J. Dec. 27, 2011) (finding significant that the bond contained broad language by its inclusion of any property "held by the Insured in any capacity.") Construing the Complaint in the light most favorable to Montachem as the Court must at this stage, the Court finds that the Complaint has pled Montachem's interest in the funds that meets this language required for ownership within the scope of the Policy. The Court therefore rejects Federal Insurance's challenge to coverage on this basis.

## V.     CONCLUSION

For the reasons stated above, the Court will DENY Defendant's Motion to Dismiss. An appropriate Order will follow.


Date: **March 8, 2023**

                                                      s/ Zahid N. Quraishi
                                                    **ZAHID N. QURAISHI**
                                                    **UNITED STATES DISTRICT JUDGE**